# EXHIBIT A

**HRSA**
Health Resources & Services Administration
Office of Special Health Initiatives
5600 Fishers Lane
Rockville, MD 20857

November 4, 2024

**BY EMAIL**
Linda Kamin
Executive Director, Contract Operations and Government Reporting
Bristol Myers Squibb
Linda.kamin@bms.com

Dear Linda Kamin:

The Health Resources and Services Administration (HRSA) has received the information submitted in your October 24, 2024, correspondence, regarding Bristol Myers Squibb's (BMS) proposal to implement a 340B rebate model in the Spring of 2025 for all 340B covered entities' purchases of Eliquis.  The 340B statute states that "[t]he Secretary shall enter into an agreement with each manufacturer of covered outpatient drugs under which the amount required to be paid (taking into account any rebate or discount, *as provided by the Secretary*) to the manufacturer" shall not exceed the statutory ceiling price formula.  42 U.S.C. § 256b(a)(1) (emphasis added).  To date, the Secretary has not provided for such a rebate model.  Therefore, implementing such a proposal at this time would be inconsistent with the statutory requirements for the 340B Program, which require the approval of a rebate model such as BMS has proposed.

In addition, HRSA requests responses to the following questions:

1. Shifting to a rebate model would disrupt how the 340B Program has operated for over thirty years. As a result of this shift, covered entities, including those which primarily serve rural and underserved populations, would need to pay significantly higher prices on prescription drugs at the time of purchase.
    a. Has BMS conducted an evaluation of the impact of this proposal on the scope and breadth of health care access for patients served by affected covered entities?
    b. Has BMS conducted an analysis of the extent of the additional burden and/or costs to the affected covered entities, particularly those that are the sole or primary source of health care in a rural or underserved community?

2. BMS states that it will require covered entities to submit rebate claims to the rebate platform.
    a. What, if any, timeframes must covered entities submit data from the date of dispense to qualify for a rebate under BMS' terms?
    b. What other parties, if any, would BMS share the claims data with?
    c. What protections and safeguards would BMS plan to implement to ensure such information would solely be used in support of the 340B Program?

      d. What protections and safeguards would BMS plan to implement to ensure the privacy and security of such information?

3. BMS states that when a covered entity agrees to "share" the benefit of the 340B Price with the patient, BMS intends to provide the rebate faster than 7 days.
   a. Why is BMS proposing differential treatment for covered entities in different circumstances?
   b. Under what authority does BMS have the discretion to decide when and how covered entities receive the statutory 340B discounted price?
   c. How would BMS propose to implement this for each unique covered entity type that treats its patient populations differently?

4. Under this proposal, if BMS identifies a potential 340B duplicate discount, how will the rebate claim be adjudicated?
   a. What is the timeframe that BMS will process any such adjudication?
   b. What reconsideration or appeals process will BMS implement?
   c. Would BMS automatically deny covered entities' 340B rebate claims if BMS believes a Medicaid rebate was already paid?
   d. Would BMS automatically deny Medicaid rebate claims if BMS believes a covered entity's 340B rebate claims have already been paid?

5. Under this proposal, what are the specific reasons that will lead BMS to reject claims?
   a. Would BMS make these reasons publicly available in advance of adjudication of claims?
   b. Would covered entities receive claim-by-claim information from BMS regarding which claims were rejected and on what basis?
   c. What reconsideration or appeals process would BMS implement to ensure covered entities receive any 340B discounts that are due as required by statute?

6. With respect to the use of pharmacies with which covered entities contract:
   a. Would covered entities need to demonstrate that they purchased individual drugs subject to the rebate claim at wholesale acquisition cost?
   b. Would this process require covered entities to maintain a separate stock of drugs at the contract pharmacy?
   c. If so, how would BMS plan to ensure this process does not functionally deny covered entities access to the 340B price required by the statute given the additional upfront cost and administrative burden for covered entities, particularly low-margin safety net providers?

7. BMS states the 340B rebate will be paid at either the dispensed unit or full package size level upon receipt of a covered entity's data submission.

    a. Would covered entities have the option to choose its preference?
    b. How would BMS engage with covered entities with respect to these specifics of their prescription drug acquisition and distribution practices?

8. BMS states that it will share data with HRSA to help enhance 340B Program administration, including various reports and metrics. Please explain what data and the frequency of submission of data BMS intends to share with HRSA.

9. Under this proposal, how would BMS treat current unreplenished accumulations?

10. Under BMS's plan, will covered entities would be required to submit claims data to both 340B ESP and the rebate platform?

11. HRSA has received a number of reports of technical and customer service difficulties with 340B ESP. How would BMS ensure covered entities could submit claims without technical difficulties or delays and would be able to access customer support with any issues?

Please send your responses to [340BPricing@hrsa.gov](mailto:340BPricing@hrsa.gov).

Sincerely,

Chantelle V. Britton, M.P.A., M.S.
Director, Office of Pharmacy Affairs