UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BRISTOL MYERS SQUIBB COMPANY,

      *Plaintiff*,

  v.

CAROLE JOHNSON, in her official capacity as ADMINISTRATOR, HEALTH RESOURCES AND SERVICES ADMINISTRATION, *et al.*,

      *Defendants*.

Case No. 1:24-cv-03337 (DLF)

---

**BRISTOL MYERS SQUIBB COMPANY'S
MOTION FOR EXPEDITED DETERMINATION**

## Introduction

1.      This case concerns the federal 340B Program, which requires Bristol Myers Squibb (BMS) to sell its medicines at significantly reduced prices to certain providers. *See* 42 U.S.C. § 256b. At issue is *how* BMS makes the 340B price available. The 340B statute permits manufacturers to make the 340B price available either by a "discount" or a "rebate." *Id.* § 256b(a)(1). BMS intends to make the 340B price available through a cash rebate model. The model is as simple as it sounds: 340B providers purchase medicines at market prices and BMS pays them cash promptly after the provider submits data supporting 340B eligibility. Though the statute's text explicitly contemplates a rebate mechanism, the Health Resources and Services Administration (HRSA) has unlawfully prohibited BMS from implementing its cash rebate model. This lawsuit challenges that final decision under the Administrative Procedure Act, and the resolution of BMS's claims turn on straightforward questions of statutory interpretation for this Court to resolve as a matter of law.

2.      An expeditious final judgment on the legality of BMS's cash replenishment model is critical to preventing irreparable harm to BMS. The 340B statute and Inflation Reduction Act bar duplicate discounts—where on a single prescription a manufacturer offers both the 340B price and then pays a Medicaid rebate or offers both the 340B price and "Maximum Fair Price" (MFP), respectively. But the Secretary and HRSA have effectively abdicated responsibility for preventing these unlawful duplicates, which could lead to millions of dollars of unrecoverable losses each year. What's worse, HRSA has warned manufacturers that implementing any rebate-based approach to address these unlawful duplicates will result in expulsion from the 340B Program (and thus from Medicaid and Medicare Part B) and enormous civil-monetary penalties. BMS is thus faced with significant and irreparable harms no matter what it does. It can either proceed with its statutorily authorized cash replenishment model—and risk expulsion from the largest government

1

healthcare programs and civil monetary penalties—or it can continue the current approach—and suffer millions more in non-recoverable losses from duplicate discounting.

3. Consistent with the Court's December 30, 2024 order entering the parties' agreed briefing schedule, summary-judgment briefing will be complete by the end of March, permitting prompt resolution of this key statutory question.

4. BMS respectfully requests that the Court enter its decision by May 1, 2025, if possible. BMS must submit its plan for effectuating the MFP price under the Inflation Reduction Act by September 1, 2025. BMS must have adequate experience with its rebate model before then to ensure that its MFP effectuation plan works in the real world. A decision by May 1, 2025, will allow BMS to launch and fine-tune its rebate model before the September 1, 2025 submission deadline.

## Background

5. The 340B Program requires BMS and other medicine manufacturers to offer their medicines at significantly reduced prices (the "340B price"), 42 U.S.C. § 256b(a)(1)-(2), to a statutorily enumerated list of fifteen types of healthcare providers (known as "covered entities"). *Id.* § 256b(a)(4). Today, approximately sixty percent of hospitals nationwide can purchase medicines at the 340B price.

6. The 340B statute sets out two ways manufacturers may offer the 340B price: manufacturers may provide the 340B price through an up-front "discount" or a back-end "rebate." 42 U.S.C. § 256b(a)(1). To date, HRSA has never mandated use of one method or the other—it has left that decision to manufacturers.

7. Today, the prevailing method for offering 340B-priced medicine to covered entities is through a system of in-kind rebates, called the "product-replenishment model." BMS and other

manufacturers have significant concerns about this model, including that it enables unlawful duplicate discounts.

8. Because the current in-kind rebate system is plagued by widespread abuse that ultimately harms patients, BMS will rely on the Second Sight Solutions Beacon platform to implement a *cash* (rather than *product*) replenishment system. Under BMS's model, 340B providers will dispense medicine and send readily available information to the platform to confirm 340B eligibility; BMS then will promptly pay cash to the 340B providers. That's it. This ensures a consistent and reliable cash flow to 340B providers and establishes a mechanism for identifying and preventing duplicate discounts, all while complying with BMS's statutory obligation. This cash replenishment approach marks a significant improvement over the product replenishment approach.

9. Rather than embrace BMS's attempt to implement this lawful, common-sense approach, HRSA and the other federal defendants tried to stop it. On November 4, 2024, HRSA sent BMS a letter declaring—without explanation—that BMS's new approach would be "inconsistent with the statutory requirements for the 340B Program." Doc. 1-2 at 2.

10. The agency has posted to its public website letters it issued to another manufacturer planning to implement a rebate-based approach substantially similar to BMS's. In some of these letters, HRSA warned that, if that manufacturer implemented a rebate model, HRSA would "begin the process" of "terminating" its "Pharmaceutical Pricing Agreement," thereby expelling the manufacturer from the 340B Program, Medicaid, and Medicare Part B. HRSA Letter to Johnson & Johnson (Sept. 27, 2024), https://www.hrsa.gov/sites/default/files/hrsa/opa/sept-27-24-hrsa-letter-johnson-johnson.pdf; *see also* HRSA Letter to Sanofi (Dec. 13, 2024), https://www.hrsa.gov/sites/default/files/hrsa/opa/dec-13-2024-hrsa-letter-sanofi.pdf  (threatening

3

"potential consequences, such as termination of Sanofi's Pharmaceutical Pricing Agreement (PPA)," as well as civil monetary penalties). HRSA similarly threatened to "initiate a referral to the HHS Office of Inspector General"—the component of HHS responsible for imposing civil monetary penalties—if the manufacturer did not "ceas[e] implement[ing]" its rebate proposal. HRSA Letter to Johnson & Johnson.

11.     If that did not make matters clear enough, HRSA has also prominently displayed on its website a public announcement asserting its position that rebate models "would significantly and unilaterally alter the administration of the [340B] Program." *340B Drug Pricing Program*, HRSA, https://www.hrsa.gov/opa (last updated Jan. 2025). This announcement, in combination with HRSA's threat to terminate the PPA for manufacturers that exercise their statutory right to implement rebate-based approaches—the nuclear option, because it would lock a manufacturer out of not just the 340B Program but also Medicaid and Medicare Part B—makes plain the seriousness with which HRSA intends to punish purported violators.

## Argument

12.     An expedited determination on the merits is necessary because HRSA has placed BMS in the untenable position of choosing between expulsion from Medicaid *and* Medicare Part B if BMS proceeds with implementing its cash replenishment model, or suffering millions of dollars of irreparable losses flowing from unlawful duplicate discounts if it is forced to stay the current course. *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 191 (D.D.C. 2021) (concluding that unrecoverable and significant financial harm constitutes irreparable harm).

13.     HRSA's decision to threaten manufacturers with expulsion from the majority of federal healthcare programs would have devastating consequences—to BMS, to the government's healthcare programs, and most importantly to patients. Medicaid and Medicare Part B account for a significant portion of the American pharmaceutical market. HRSA's threat to abruptly cease

Medicaid and Medicare Part B reimbursement for all of BMS's life-saving medicines if it implements the cash rebate model would wreak havoc on millions of patients who rely on such reimbursements. Although BMS would, of course, continue to *offer* its medicines to all in need of them, HRSA's threat to prevent the federal government from *reimbursing* for those medicines would gravely impact patients and their physicians nationwide. That action, though effectuated by HRSA, would bring irreparable reputational harm to BMS.

14. HRSA's threatened civil monetary penalties are also potentially crushing. Current regulations provide for a penalty of $6,813.00 *per violation*. 42 C.F.R. § 10.11; 88 Fed. Reg. 69,531, 69,532 (Oct. 6, 2023). Those penalties, applied to hundreds of thousands (or perhaps more) of orders of BMS's medicines, would be massive. If BMS suffered either of these unlawful sanctions, it would have no remedy.

15. At the same time, without a cash rebate model with basic transparency and accountability standards, BMS will suffer millions of dollars in losses caused by unlawful duplicate discounts. For all practical purposes, those losses are unrecoverable.

16. First, there is no viable path for recovering duplicate discounts from the 340B providers that cause them. The 340B statute has an administrative dispute resolution process, but HRSA has made ADR effectively unavailable to manufacturers. Before initiating ADR, manufacturers must first audit a covered entity to access the dispute resolution process. 42 U.S.C. § 256b(d)(3)(A); 42 C.F.R. § 10.21(a)(2). But HRSA made that statutory step practically insurmountable, making agency approval a prerequisite for exercising a manufacturer's audit rights. To initiate an audit, a manufacturer must first establish "reasonable cause." 61 Fed. Reg. 65,406, 65,410 (Dec. 12, 1996). Under the current practices of the 340B Program, however, it is difficult (if not impossible) for manufacturers to acquire sufficient information to establish

5

"reasonable cause" unless covered entities voluntarily hand it over—which, of course, they have no incentive to do. Second, even if BMS could establish reasonable cause, successfully complete an audit, and identify unlawful duplicates, there is no requirement for covered entities to make BMS whole. Although required by the 340B statute, HRSA has failed to provide any concrete, meaningful remedy for manufacturers that prevail in ADR to recover their losses. *See* 42 U.S.C. § 256b(d)(2)(B); 89 Fed. Reg. 28,643 (Apr. 19, 2024).

17. BMS thus is faced with imminent and irreparable harms, no matter which path it chooses. Either BMS will implement its cash rebate program despite HRSA's threats of expulsion from the Program and extraordinary penalties, or BMS will forgo implementation and suffer significant, unrecoverable losses.

18. Unlike other manufacturers before the Court, BMS's drug Eliquis has been selected for the "Drug Price Negotiation Program" under the Inflation Reduction Act, a process which will result in a MFP that BMS must offer. But the Act also guarantees MFP-340B nonduplication: A manufacturer is obligated to provide only the lower of the MFP or 340B ceiling price, not both. 42 U.S.C. § 1302f-2(d). This nonduplication protection is paired with a compliance obligation: The manufacturer risks a significant civil monetary penalty (CMP) if it does not provide the correct price. *Id.* § 1320f-6 (MFP CMPs); *id.* § 256b(d)(1)(B)(vi) (340B CMPs). The Department of Health and Human Services has authorized manufacturers to provide the MFP through a rebate. Doc. 1 ¶ 48. But to ensure there is no 340B-MFP duplication, BMS *has* to use a rebate model for Section 340B as well. *Id.* ¶¶ 50-52, 92.

19. BMS must submit its MFP implementation plan by September 1, 2025, which includes its MFP rebate model. In order to have sufficient experience with the rebate model to inform its MFP implementation plan, BMS requires a decision from the Court no later than May

1, 2025. That will allow BMS adequate time, if the Court rules in its favor, to roll out its rebate model and have adequate experience with it with covered entities before submitting its MFP implementation plan on September 1.

20. BMS conferred in good faith with the Department of Justice on this motion under Local Civil Rule 7(m). The government did not consent to the relief sought in this motion.

## Conclusion

21. BMS respectfully requests that the Court resolve the parties' cross-motions for summary judgment by May 1, 2025.

Respectfully submitted,

/s/ Sean Marotta

Sean Marotta (D.C. Bar No. 1006494)
Marlan Golden (D.C. Bar No. 1673073)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-4881
sean.marotta@hoganlovells.com

*Attorneys for Bristol Myers Squibb Company*

Date: January 14, 2025